## CAPITAL GRAIN & FEED CO. v. FEDERAL RESERVE BANK OF ATLANTA.

(District Court, N. D. Georgia. January 8, 1925.)

No. 659.

**1. Banks and banking ⬳175(½)—Under agreement with collecting bank, its correspondents held agents of depositor.**

Where a check was deposited in a bank for collection and credit, subject to an agreement that "this bank acts only as collecting agent and assumes no liability on account of delay or loss while items are in transit or until it receives final actual payments from its correspondents," the correspondents through which it sends the check for collection are not its agents, but agents of the depositor, and any right of action against them for delay or default is in the depositor.

**2. Banks and banking ⬳161(2)—Duty of collecting bank primarily governed by local law and usage.**

The duty of a correspondent bank receiving a check for collection is primarily regulated by the law and the custom of banking at the place where it does business, but may be affected by special instructions given or agreements made.

**3. Banks and banking ⬳171(3)—Collecting bank not negligent in forwarding check direct to drawee.**

Under Acts Ga. 1919, p. 207, § 36, and Acts Ala. 1919, p. 856, § 1, similar statutes providing that checks drawn on a bank in another city, within or without the state, may be sent for payment by the collecting bank direct to the drawee bank without incurring liability, provided it has used due diligence in other respects, a collecting bank located in either of those states is not chargeable with negligence for following such practice.

**4. Banks and banking ⬳171(1)—Special circumstances may require extra effort by collecting bank.**

If a collecting bank has knowledge that the drawee bank is in failing condition and liable at any time to suspend, due diligence may require that some extra effort at collection be made.

**5. Banks and banking ⬳161(3)—Collecting bank accepting draft in payment takes the risk of its being paid.**

It is the general rule of law that a collecting bank, which accepts in payment of the check to be collected the draft of the drawee on another bank, takes the risk of the draft being paid.

**6. Payment ⬳3—State law permitting banks to pay checks in exchange held unconstitutional.**

Act Ala. Sept. 30, 1920 (Acts 1920, p. 36), providing that, when a check is presented or forwarded to the payee bank for payment through another bank or agency, it may at its option pay or remit the same in money or in exchange drawn on its reserve agent, is unconstitutional and void as an attempt by the state to make a class of debts payable at the option of the debtor in something other than gold or silver coin.

**7. Pleading ⬳6—Judicial notice will not be taken of regulations of Federal Reserve Board.**

A regulation of the Federal Reserve Board is not such departmental action as will be judicially noticed without pleading.

At Law. Action by the Capital Grain & Feed Company against the Federal Reserve Bank of Atlanta. On demurrers to petition and answer. Each demurrer sustained in part, and overruled in part.

Kendrick L. Scott and McDaniel & Neely, all of Atlanta, Ga., for plaintiff.

Randolph & Parker, of Atlanta, Ga., for defendant.

SIBLEY, District Judge. This is an action at law for damages on account of alleged negligence of the Federal Reserve Bank of Atlanta in the handling of a check sent it for collection. Demurrers to the petition and to the answer are for decision.

The petition sets up that petitioners, a partnership doing business under the name Capital Grain & Feed Company, having a deposit of more than $7,500 in the Merchants' Bank of Montgomery, Ala., drew their check for that sum, payable to the order of Fifth National Bank of New York, had it certified by the Merchants' Bank, and sent it to the Fifth National Bank for collection and credit; it being agreed with the latter bank as follows:

"This bank acts only as collecting agent and assumes no liability on account of delay or loss while items are in transit, or until it receives final actual payments from its correspondents."

The check was forwarded by the Fifth National Bank to the Federal Reserve Bank of New York, and by the latter to defendant, who received it on the morning of December 19, 1922. On the afternoon of the next day the check was sent for payment direct to the drawee, Merchants' Bank of Montgomery, which was a member bank of defendant, reaching it on the morning of December 21st. Merchants' Bank charged the check to plaintiff's account and sent its draft on the defendant in payment, which was received in Atlanta December 22d. Though there were funds to the credit of the Merchants' Bank sufficient to pay the draft, it was not paid and proceeds remitted to the New York bank. The following day the Merchants' Bank was put in the hands of a receiver, and it is now impossible to collect from it beyond some dividends paid by the receiver, which have reduced the loss to $3,750. Negligence is claimed

in that defendant knew the weak condition of the Merchants' Bank and should not have delayed collecting the check as it did, should not have sent it direct to the drawee, but should have presented it for payment in cash over the counter; the Merchants' Bank having on hand all during December 21st and 22d, cash sufficient to pay it, and should not have accepted the draft in payment, or, having done so, should not have delayed paying the draft until after the failure of the Merchants' Bank. Notice of the facts was not given by defendant until the afternoon of December 23d, and this is also charged as negligence.

[1] 1. The first contention urged is that the defendant had no such relations with plaintiffs as to be liable to suit by them, but is answerable only to the forwarding bank. Under the quoted agreement with the Fifth National Bank, that bank did not accept ownership of the check, though it was payable to it, but was to act only as an agent for its collection. Had there been no other stipulation, since the transaction was in the course of banking business done in New York, what is termed "the New York rule" would have applied, by which it would be held that the Fifth National Bank had undertaken to make the ultimate collection, furnishing the necessary agencies and means therefor and not merely to procure for the plaintiffs other agents to make it. Exchange National Bank v. Third National Bank, 112 U. S. 276, 5 S. Ct. 141, 28 L. Ed. 722. The result would be that the correspondent banks to which the check was forwarded would be the agents of the Fifth National Bank and not of plaintiffs, and for nonfeasance, at least, would not be accountable to plaintiffs, as they would be if their agents. The plaintiffs would be entitled to hold the Fifth National Bank, and it alone, responsible. But the New York rule is, after all, only a presumption of law as to what the parties to such a transaction intended to agree to. It may be altered or abrogated by statute, or departed from by mere agreement otherwise. Federal Reserve Bank of Richmond v. Malloy et al., 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261. In that case the deposit for collection was made in Florida, where the Legislature had enacted that, "When a bank receives for collection any check * * * and forwards the same for collection as herein provided (i. e., without delay, in usual commercial way in use according to the regular course of business of banks), it shall only be liable after ac-

tual final payment is received by it, except in case of want of due diligence on its part as aforesaid." This statute was held to enter into the contract of deposit for collection, and since the effect of it was to relieve the receiving bank from liability for the defaults of its correspondents, they were held to be intended not to be agents of the receiving bank and answerable only to it, but of the owner of the check and answerable to him. Otherwise the owner would be wholly without remedy on the one hand, and on the other a principal would have escaped responsibility for the negligence of its own agents, and those agents have escaped responsibility to any person. In the present case the agreement is that the receiving bank "assumes no liability on account of delay or loss while items are in transit or until it receives final actual payments from its correspondents." The substance of this agreement is exactly the same as the Florida statute and must be held to have the same consequences. Each correspondent is the agent of plaintiffs and answerable to them for its conduct. The plaintiffs may therefore sue the defendant for its negligence.

[2-4] 2. While the relationship between plaintiffs and the collecting bank is controlled by the law and the contract at the place of deposit, as has just been ruled, the duty of the correspondent bank is primarily regulated by the law and the customs of banking at the place where it does its business, and may be affected likewise by special instructions given it or agreements made. When the Fifth National Bank, through the Federal Reserve Bank of New York, procured the Federal Reserve Bank of Atlanta to act for plaintiffs in collecting this check, the parties must have expected the thing to be done according to the law and customs applying in Atlanta and Montgomery. While the original rule of law was that a check ought not properly to be sent for payment direct to the drawee bank (Reserve Bank v. Malloy, supra), yet in both Georgia and Alabama there are closely similar statutes enacting that checks drawn on a bank in another city within or without the state may be sent for payment by a collecting bank direct to the drawee bank without incurring liability; "provided, however, such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument." See Georgia Acts 1919, p. 207, § 36; Alabama Acts 1919, p. 856, § 1. Under this legislation the mere sending the check to

the drawee for payment is not negligence and the collecting bank is not rendered liable for consequences which were not reasonably to be foreseen by it. If, however, the drawee bank is known to the collecting bank to be in a failing condition, as is alleged here, and liable at any time to suspend payments, due diligence may require some extra effort at collection to be made. Whether such was the case here, and what due diligence would have required to be done under the circumstances, are questions of fact to be determined by a jury. Ordinarily a forwarding for presentment on the day after receipt of a check is considered sufficient diligence. 5 Cyc. 532; Comer v. Dufour, 95 Ga. 376, 22 S. E. 543, 30 L. R. A. 300, 51 Am. St. Rep. 89. But here again notice of special circumstances might be considered by the jury to require greater haste.

[5, 6] 3. The general rule of law is that a collecting bank which accepts in payment of the check to be collected the draft of the drawee on another bank takes the risk of the draft being paid. Reserve Bank v. Malloy, supra. The defendant here, while it did not pay the draft on it sent by the Montgomery bank, did not return it and demand the check back, but let matters stand, so that it may be found to have accepted it. But it is contended that no harm was done thereby, because the Alabama bank had the right, under the Alabama statute approved September 30, 1920 (Acts 1920, p. 36), to tender the draft in payment. The material part of this statute is:

"Whenever a check or checks are forwarded or presented to a bank for payment by any federal reserve bank, express company or post office employee, other bank, banker, trust company, or by any agent or agents thereof, or through any other agency or individual, the paying bank or remitting bank may pay or remit the same, at its option, either in money, or in exchange drawn on its reserve agent or agents in the city of New York or in any reserve city within the Sixth Federal Reserve district."

This act is said to be unconstitutional in that thereby the state of Alabama has made something else than gold and silver coin tenderable in payment of the debts of the Merchants' Bank to its depositors. The holder of an uncertified check has no debt against the bank. First National Bank v. Whitman, 94 U. S. 343, 24 L. Ed. 229. Where, however, the bank has certified the check for the drawer, as was done here, a direct and primary obligation arises on the part of the bank to pay it. Merchants' Bank v. State Bank, 10 Wall. 604, at pages 647, 648, 19 L. Ed. 1008. It may well be, however, that the payment due on the certified check is only in such medium and at such time and place as would have been proper had the check not been certified. So it becomes necessary to examine the application of this statute to ordinary checks. In Thompson v. Riggs, 5 Wall. 663, 18 L. Ed. 704, where the point at issue was the proper medium of payment, it was said:

"Where the deposit is general, and there is no special agreement proved, the title of the money deposited, whatever it may be, passes to the bank * * * and the bank becomes liable for the amount as a debt, which can only be discharged by such money as is by law a legal tender."

In Farmers' Bank v. Federal Reserve Bank of Richmond, 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635, a statute of North Carolina, which gave the bank the right to pay its check by another check, except where the depositor, in drawing his check, specified that it should be payable in money, was held good, because it did not deprive the depositor of the right to collect his debt in money, but simply made his failure to specify that mode of payment a consent to the payment by check. The statute here goes much further and is fundamentally different. It offers no basis of presumed consent in the payment of a particular check and could involve the consent of the depositor only by supposing that in making his deposit with such a law on the statute books he consented thereto. But the statute does not pretend to regulate the terms on which deposits in banks in Alabama shall be made. It baldly enacts an option in payment of them whereby the bank may have an absolute choice of paying in cash or by check. This is, on its face, a plain effort to make a debt by general deposit dischargeable by something else than gold or silver coin or other medium fixed by constitutional federal authority. The depositor so far from being presumed to consent thereto, should rather be presumed to have treated the law as void and without effect on his rights. Had the act merely made the place of payment optional and authorized the drawee to refer the holder of the check to its reserve city for payment, or if the check to be given on the reserve city were made only tentative and to be payment when itself paid in lawful money, the case would have been different. It is true that a check, as between the par-

ties giving and receiving it, is ordinarily not payment until itself paid, unless expressly taken as payment; but in the case of a commercial check presented and paid by another check, the first check is taken up and marked "paid" and charged to the drawer, and he and all prior indorsers are discharged. There is no dishonor and protest or other means taken to hold them liable. The second check is thus, by force of commercial custom, necessarily payment, and this statute so declares. Moreover, the statute is so broad as to appear to apply also to the second check given in payment of the first, if on an Alabama bank. So that it, when presented, might itself be paid by another check and so no money ever be collectible in Alabama, or any other state where a similar law should be enacted. The statute, as written, is an effort by a state to make a class of debts payable at the option of the debtor in something else than gold and silver coin, and is void. It affords no reason why the defendant here should not have demanded money in payment of the check in its hands for collection.

[7] 4. It is also contended that the Reserve Board Regulation J, Series 1920, subsec. 8, which was in force at this time, authorized the sending of this check direct to the drawee and the remittance back by draft. This regulation, I think, is not such a departmental action as will be judicially noticed without pleading, as a statute would be. Its provisions, not appearing in the petition, cannot be considered on a demurrer thereto.

5. Furthermore, the petition alleges that the draft which the Merchants' Bank sent to defendant was good, and that defendant neglected to pay it and remit the proceeds promptly, and that the loss really resulted from that neglect. If that be the truth, plaintiffs have a cause of action for this conduct independently of all else.

6. The demurrers to the petition will therefore be overruled, except those to paragraphs 15 and 16, touching the failure to give notice to the drawer of the situation. It affirmatively appears that nothing was unpaid except the draft made by Merchants' Bank on defendant. The plaintiffs were not parties to it and not to be notified of its dishonor. Moreover, notice of its nonpayment, if it were bad, could have been given only 24 hours before the receivership, and plaintiffs could have made no collection without procuring and surrendering this draft. The damage, if any was done, was not due to a want of notice, nor avoidable by notice, but to the other matters discussed above. The plaintiff's case must stand or fall on these. Paragraphs 15 and 16 will be stricken.

7. The answer is not demurrable as a whole. Its denials put the plaintiffs on proof of many of their allegations. It sets up that the draft sent the defendant in payment could not be paid when received because in excess of the available balance on hand to the credit of the Merchants' Bank, but that items in course of collection for it when available would have rendered the draft good. A jury might conclude that the defendant acted prudently in holding the draft to await these collections instead of sending it back to Montgomery.

8. The general reference, in paragraph 17 of the answer, to the rules and regulations of the Federal Reserve Board and to business usages and customs adds nothing to the defense. These are not to be judicially noticed, but must be pleaded and proved in order to be available. On the other hand, the general reference to the statutes of Georgia and Alabama is unnecessary but unobjectionable; such public laws of either state as are applicable and valid being judicially noticed and applied without pleading or proof.

9. Paragraph 20 of the answer is defective as pleaded. If the rules and regulations of the reserve banks referred to were sufficiently pleaded, the knowledge of them on the part of the plaintiffs would be material. Their knowledge of the statutes involved is not material, for all persons are bound to know the statutes binding on banks with which they deal. The contention that plaintiffs knew of the pending insolvency and failure of the Merchants' Bank, and if they had succeeded in withdrawing their deposit it would have been a preference of them, void under the Alabama law, seems to state a matter of defense. The failure of the defendant to secure a collection, the benefit of which the plaintiffs could not retain, would not be a damage to them; it appearing that they have received equal treatment with other creditors by the receiver. The allegation that one of the plaintiffs, being a director of the Merchants' Bank, ought to have known of its condition, is irrelevant and stricken. Such obligation would not in this case be the equivalent of actual knowledge. This portion of the defense is retained, though meagerly pleaded, for further inves-

tigation of the law and facts that may be applicable thereto.

Judgment may be taken upon the demurrers in accordance with this opinion.