STEUART PETROLEUM COMPANY ET AL. *v.* BOARD OF COUNTY COMMISSIONERS OF ST. MARY'S COUNTY ET AL.

[No. 41, September Term, 1975.]

*Decided December 3, 1975.*

436

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Emanuel H. Horn,* with whom were *Melvin J. Sykes, Robert V. Smith* and *Oliver R. Guyther* on the brief, for appellants.

*James P. Salmon,* with whom were *Joseph D. Weiner* and *Paul J. Bailey* on the brief, for Board of County Commissioners of St. Mary's County, part of appellees. *Henry R. Lord, Deputy Attorney General,* with whom were *Francis B. Burch, Attorney General, George A. Nilson, Assistant Attorney General,* and *Warren K. Rich, Assistant Attorney General,* on the brief, for The Maryland Historical

Trust and Tri-County Council for Southern Maryland, other appellees.

SINGLEY, J., delivered the opinion of the Court.

Steuart Investment Company and Steuart Petroleum Company (collectively referred to in this opinion as Steuart) have respectively owned and operated an oil storage terminal at Piney Point in St. Mary's County (the County) since 1949.[1] The terminal has the capability of storing 200,000,000 gallons of fuel oil which is off-loaded from tankers and delivered to customers in the District of Columbia, Maryland and Virginia principally either by pipeline or barge, primarily for use as boiler fuel. Some aviation fuel is also stored for the Department of Defense.

Steuart appealed to the Court of Special Appeals from an order and a decree entered against it by the Circuit Court for the County in a proceeding in which three different actions had been consolidated for trial. We granted certiorari in order that the matter might be considered by us prior to argument in the Court of Special Appeals.

In 1968, Steuart had announced and later deferred plans to build a topping plant at Piney Point.[2] On 25 October 1973, Steuart made a public announcement of its intention to go forward with the construction of a refinery which would occupy four and one-half acres of its 350-acre tract; would have a capability of producing 100,000 barrels of fuel oil per day, and would cost $160,000,000.00. On 1 November 1973, Steuart's contractor applied for, and the County granted, building permit No. 6166 which authorized the construction of a steel and concrete "Warehouse and shop storage" building to cost $200,000.00. One day later, the same contractor applied for, and was granted, building permit No. 6173 which covered the construction of a "Foundation pad

---

1. For another case involving the same operation, *see* Steuart Transportation Co. v. Ashe, 269 Md. 74, 304 A. 2d 788 (1973).

2. We were advised that a topping plant is a refinery which produces fuels heavier than gasoline. Steuart contemplated that the refinery would also produce naphtha as a feedstock for synthetic natural gas and for the petrochemical industry.

for processing and utility area" at a cost of $800,000.00. Neither of the applications nor the single site plan, offered in support of both applications, made any allusion to the proposed refinery. The site plan indicated a foundation pad area of 780,000 square feet, but the application described the pad as occupying 78,000 square feet.

The county, on 7 November, revoked permit No. 6173 on the ground that Steuart, by failing to disclose the purpose for which the foundation pad was to be used and the nature of the structures which were to be placed upon it, understated the cost of the project. After a conference on 12 November between County officials and representatives of Steuart, the permit was reinstated on 21 November with a caveat by the County that: "The permit can in no way be construed as pertaining to the construction of anything except the said foundation pad. Any structure to be erected thereon would necessarily require application for a separate building permit."

On 1 November, Ordinance No. 73-25 covering the issuance of County building permits had become effective, implementing Section 217 of the Public Local Laws of St. Mary's County as amended in 1969, which had granted to the County Commissioners broader discretionary powers than had theretofore existed. In pursuance of this grant, the new County building permit ordinance required that construction should commence within four months of the grant of a permit, a condition which applied to both permits held by Steuart.[3] While Steuart challenged the regularity of

3. St. Mary's County Ordinance No. 73-25, enacted on 9 October 1973, reads in pertinent part:

"Section 1. Prior to the commencement of construction work on any buildings or structures of any kind within the limit of St. Mary's County the person, firm, or corporation so constructing shall apply to St. Mary's County for a building permit. For each permit issued the County shall collect a fee equal to one-quarter of one percent (.0025%) of the cost of the improvements, but in no event shall the fee be less than Five Dollars ($5.00).

"Section 2. A building permit is to be obtained from the County Commissioners or its duly authorized agent. The following information will be needed as a minimum:

(a) name and address of owner of property wherein building or structure is to be erected;

the proceeding with respect to the enactment of the ordinance and the County's power to impose the four month limitation, the court below concluded that the ordinance had been regularly adopted and that the time limitation was a valid and reasonable corollary to the power to grant the permit. We agree.

On 1 March 1974, the day before the expiration of the four month period applicable to permit No. 6173, Steuart's employees, rather than its contractor, poured six concrete footings for a pad on which a transformer was to be located. As work proceeded on the warehouse, it was determined that the footings had been improperly sited, and they were ultimately incorporated in the foundation for the warehouse and shop storage building. In August, 1974, a concrete pad eight feet square was poured for the transformer at a location different from that shown on the application for permit No. 6173. Steuart asserts that the four month time

    (b) dimensions of building or structure and type of construction;
    (c) sketch of lot showing building or structure location;
    (d) cost of construction.

\* \* \*

"Section 6. Construction must commence within four (4) months from the date of issue of a building permit, otherwise the permit shall become void and of no force and effect. Reapplication and payment of fees by the applicant shall be required prior to the issuance of a new permit and prior to commencement of any construction. The permit must be conspicuously posted at the construction site until all work is completed.

"In unusual circumstances and upon recommendation by the County Engineer, the County Commissioners of St. Mary's County may extend the effective date of the building permit as deemed necessary without the reapplication or payment of fees.

\* \* \*

"Section 8. Any person, firm, partnership. corporation or association who shall commence construction in violation of the terms of this Ordinance without having complied with the provisions of this Ordinance and without having first obtained a building permit as herein prescribed shall be fined not less than Twenty-five Dollars ($25.00) nor more than One Hundred Dollars ($100.00).

"The St. Mary's County Commissioners may seek a permanent or temporary injunction from the Circuit Court for St. Mary's County, Maryland with respect to any alleged violation of this Ordinance and may recover the said fine by civil action in any court of competent jurisdiction."

limitation in building permit No. 6173 did not begin to run until 11 February 1974, the date on which a grading permit was issued by the County. This assertion is predicated on the fact that the County Commissioners had informed Steuart in the letter of 21 November 1973 that "prior to the commencement of any construction of the foundation pad, application must be made to and approved by this office [of the County Engineer] for a grading permit . . . ." Assuming, for the purposes of this opinion, that the delay in the issuance of the grading permit until February suspended the four month time limitation on the building permit, Steuart still failed to commence construction under permit No. 6173 within four months because the concrete pad was not poured until August, 1974. And, as we will develop later, the pouring of six footings for the pad in March could not, as it turned out, constitute the commencement of construction.

Meanwhile, on 28 May 1974, the County's new zoning ordinance had become effective. An oil refinery is not a permitted use in property classified as I-1 (General Industrial) or as PD-IP (Planned Development - Industrial Park), which allow industrial uses in the St. Mary's County zoning scheme. These are the classifications which appear to apply to Steuart's Piney Point tract. Storage of petroleum products, however, is a permitted use in a General Industrial District under § 9.4 B 3 of the ordinance and in a Planned Development - Industrial Park District under § 10.19 B 4.

At its 1974 session, the General Assembly had enacted Chapter 583 of the Laws of 1974, referred to by the parties as the Bailey Bill,[4] which would add a new section 4.01(c) to Maryland Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.) Art. 66B, subject, however, to referendum by the voters of the County:

> "In St. Mary's County, land and buildings may not be used for chemical or catalytic manufacturing, chemical fabrication, gasoline processing, or

---

4. It was sponsored by two residents of St. Mary's County: Paul J. Bailey, the Senator representing St. Mary's and Charles Counties and John Hanson Briscoe, Speaker of the House of Delegates.

refining of petroleum or petroleum products. This
prohibition does not apply to land and buildings
used for these purposes on July 23, 1974."

After the Bailey Bill was approved by the voters on 23 July
1974, the County, on 15 August 1974, revoked permit No.
6173 covering the foundation pad because construction had
not commenced within four months from the date the
permit was issued. The County then sought, in an action in,
equity, an injunction prohibiting the construction of the
refinery, relying on the prohibition contained in the Bailey
Bill and Steuart's failure to commence construction of the
foundation pad within four months after the issuance of a
permit. Soon after, Steuart entered an appeal from the
revocation of the permit in an action at law in the Circuit
Court for the County.

The two cases came on for hearing and were consolidated
with a third, a bill of complaint filed by the Water Resources
Administration of the State's Department of Natural
Resources, which sought to enjoin the construction of the
refinery because necessary permits for the use and
discharge of water had not been obtained by Steuart from
the State.[5]

The trial court (Ralph W. Powers, J.) entered a decree
upholding the revocation of the permit for the foundation
pad because construction had not been commenced within
four months, a limitation which the court held to be valid,
and declaring that the Bailey Bill was constitutional and
valid. Steuart's appeal from the revocation of the building
permit was dismissed as having been mooted by the equity
decree, and the State's bill of complaint for injunctive relief
was dismissed as premature without prejudice to the State's
right to institute an action at a later date. This appeal was
entered from the order dismissing the law action as well as
the decree upholding the revocation of the permit and the
validity of the Bailey Bill. No appeal was taken by the State.

---

5. Maryland Historical Trust and Tri-County Council for Southern
Maryland were permitted to intervene.

Steuart bottoms its argument on three points with which ve have taken some editorial liberty:

(i) It acquired vested rights of which it could not be deprived by the revocation of building permit No. 6173, by the Bailey Bill or by any other legislation because it had timely commenced construction of a warehouse, a part of an integrated refinery project;

(ii) The Bailey Bill is invalid because it amounted to zoning by plebiscite and because its scope was too broad for it to be properly submitted to local referendum; and,

(iii) The Bailey Bill and the St. Mary's County zoning ordinance are invalid because they are arbitrary and beyond the police power of the State and its subdivisions.

(i)

### Vested rights

The argument that Steuart had acquired a vested right to build an oil refinery because it was permitted to complete a warehouse and shop storage building is largely negated by the testimony of William R. Saul, vice president of Steuart Petroleum, who admitted that during the course of the conference with the County Commissioners on 12 November 1973, he had conceded that the warehouse building could be used for other purposes in the event that the refinery was not built.

After examining a transcript of the meeting with the Commissioners, Judge Powers found as a fact that Mr. Saul had stated that the warehouse building would be constructed whether Steuart went forward with the refinery or not. As we have previously indicated, neither of the applications filed on 1 and 2 November 1973 nor the site plan filed in support of them contained any reference to the refinery project.

The argument that a vested right could somehow be

derived from the commencement of work under permit No. 6173 for the foundation pad is no more persuasive.

While a property owner has no vested right in an existing zoning classification, *Rockville Fuel v. City of Gaithersburg*, 266 Md. 117, 133-35, 291 A. 2d 672, 680-81 (1972), there may be circumstances under which a property owner may either acquire a vested right to continue construction under a validly issued permit or a right to assert an estoppel against the issuer of the permit:

> "The majority rule, which can be synthesized from the multitudinous decisions in this area, may be stated as follows: A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations." 2 A. Rathkopf, The Law of Zoning and Planning ch. 57-6, 57-7 (3d ed. 1972).

*See also* 1 E. Yokley, *Zoning Law and Practice* § 9-5 at 403-12 (3d ed. 1965); 9 E. McQuillin, *The Law of Municipal Corporations* § 26.214 at 558-60 (rev. 3d ed. 1964).

This was the principle upon which we relied in the recent case of *Pemberton v. Montgomery County*, 275 Md. 363, 340 A. 2d 240 (1975) where we held to be fairly debatable a finding by the County Board of Appeals that the obtention of a permit for and the pouring of a foundation for a retaining wall and for a gasoline filling station gratified a requirement that work be commenced within 12 months of the granting of a special exception, for the construction of a filling station.

On the other hand, in *Ross v. Montgomery County*, 252 Md. 497, 250 A. 2d 635 (1969), we concluded that the pouring of a single footing was not enough to give the property

owner a vested right to build an apartment hotel under a building permit issued prior to a change in the zoning classification of the property.

The distinction between the two cases is that, in *Pemberton*, the foundation which was laid ultimately became a part of the retaining wall and the filling station, while in *Ross*, the footing was covered with earth, and the site was used as a parking lot. Steuart's pouring of the footing was not the commencement of the foundation pad. Located in the wrong place, it was ultimately covered by the warehouse. It simply failed to meet the tests enunciated by *People's Counsel v. Public Service Comm'n*, 259 Md. 409, 416, 270 A. 2d 105, 108-09 (1970), taken from *Rupp v. Earl H. Cline & Sons*, 230 Md. 573, 578, 188 A. 2d 146, 149 (1963):

> " '[a] manifest commencement of some work or labor on the ground which everyone can readily see and recognize as the commencement of a building . . . begun with the intention and purpose then formed to continue the work until the completion of the building.' "

Furthermore, Steuart's substantial expenditures preliminary to the commencement of construction, which included $175,000.00 for a feasibility and design study and $82,500.00 for an environmental impact study, are not sufficient to support its claim of a vested right. These expenditures are similar to those incurred by the Baltimore Gas and Electric Company preliminary to the construction of the Calvert Cliffs Nuclear Power Plant involved in *People's Counsel* and to the expenditure of over $56,000.00 in architect's fees in *Ross*, neither of which was held to be "substantial" due to the absence of actual construction. As the Court said in *County Council v. District Land Corp.*, 274 Md. 691, 707, 337 A. 2d 712, 721 (1975): "[w]e remain unpersuaded by the argument that the rule is less onerous elsewhere, *see* 2 Rathkopf, The Law of Zoning and Planning, ch. 57, § 3 (3d ed. 1972) and cases there cited."

(ii)

## The Bailey Bill

Steuart launches a bifurcated attack on the Bailey Bill: first, it says that this was zoning by plebiscite, and alternatively that the scope of the Bailey Bill is too broad to be the subject of a public local law.[6] We regard the first argument as based on misconception. In the context of zoning law, a "plebiscite of the neighbors" or "of the neighborhood" refers to instances where the action of an administrative body which effects a change in zoning and deprives an individual of a property right is predicated on the pleasure of the owners of nearby property rather than on a comprehensive plan, which imposes mutual restrictions and confers mutual benefits on all, *Benner v. Tribbitt*, 190 Md. 6, 20, 57 A. 2d 346, 353 (1948). *See Montgomery County Council v. Scrimgeour*, 211 Md. 306, 313, 127 A. 2d 528, 532 (1956).

Steuart argues that the Bailey Bill was equivalent to zoning by plebiscite because there are no other refineries in existence or planned in St. Mary's County, and that this circumstance would necessarily lead the average voter to conclude that a vote for the Bailey Bill was actually a vote against Steuart's proposed refinery. The simple answer to this contention is that the Bill, by its very title, would ban the use of any land in the County for refineries and chemical industries. *See Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365 (1926); *Potomac Sand & Gravel Co. v. Maryland*, 266 Md. 358, 293 A. 2d 241 (1972). The Bailey Bill was no more zoning by plebiscite than would have been the case had the County's 1974 zoning ordinance been taken to referendum. It has long been settled that the applicability of an act of the Legislature to a particular area may be conditioned on a vote of the residents, *Hammond v. Haines*,

6. Because of our conclusion that Steuart acquired no vested right to construct a refinery, any consideration of the validity of the Bailey Bill is not necessary to support the result which we reach. However, because the point was decided below, and briefed and argued before us, we propose to dispose of the contention in order to avoid the expense of another appeal, Maryland Rule 885.

25 Md. 541 (1866); *Burgess v. Pue*, 2 Gill 11 (1844). *See particularly* the discussion in *Cole v. Secretary of State*, 249 Md. 425, 434-35, 240 A. 2d 272, 277-78 (1968).

Steuart argues that the Bailey Bill is too broad in its scope, or too far-reaching in its effect, to be regarded as a public local law and that a public general law cannot be subject to referendum at the direction of the Legislature.

As regards the first part of the argument, the lower court concluded, as do we, that nothing could be more local in scope than legislation affecting land use in a single county, irrespective of the fact that it could be contended that adjacent counties were indirectly affected. Our cases recognize that although a local law may be applicable to all persons, it is effective only within defined territorial limits, *Potomac Sand & Gravel Co. v. Maryland*, 266 Md. 358, 378, 293 A. 2d 241, 251-52 (1972); *State v. County Comm'rs of Baltimore County*, 29 Md. 516, 519-20 (1868) and that while a local law may be of benefit to all, persons living beyond the limits within which the legislation is effective have no direct interest in it, *Norris v. Mayor & City Council*, 172 Md. 667, 681-82, 192 A. 531, 537-38 (1937).

Once the Bailey Bill is determined to be a public local law, the second part of the argument falls. It was entirely appropriate to refer the legislation to the people of the area affected for their approval, *Brawner v. Supervisors*, 141 Md. 586, 594-95, 119 A. 250, 251-52 (1922); *Hammond v. Haines*, 25 Md. 541 and *Burgess v. Pue*, 2 Gill 11, both *supra.*

### (iii)

### The unconstitutional exercise of the police power

In more than one recent case, we have had occasion to note that a statute enacted in the exercise of the State's police power need only bear a real and substantial relation to the public health, morals, safety and welfare of the citizens of the State, *Bowie Inn v. City of Bowie*, 274 Md. 230, 236, 335 A. 2d 679, 683 (1975) and that the exercise of the police power will not be interfered with unless it is shown to be exercised arbitrarily, oppressively or unreasonably.

*Compare Salisbury Beauty Schools v. State Board,* 268 Md. 32, 48, 300 A. 2d 367, 377-78 (1973) *with Maryland Board of Pharmacy v. Sav-A-Lot, Inc.,* 270 Md. 103, 106-07, 311 A. 2d 242, 244 (1973).

The wisdom or expediency of the Bailey Bill and the zoning ordinance is not for us. "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it," *Williamson v. Lee Optical Co.,* 348 U. S. 483, 488 (1955), cited in *Allied American Mut. Fire Ins. Co. v. Commissioner,* 219 Md. 607, 616-17, 150 A. 2d 421, 427 (1955). We are satisfied that both the Bailey Bill and the zoning ordinance met this test.

> *Order and decree appealed from affirmed; costs to be paid by appellants.*