575 A.2d 744

**Glenn CADE, t/a G & G Towing, et al.**

v.

**MONTGOMERY COUNTY, Maryland, et al.**

**No. 1161, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 27, 1990.

Certiorari Denied Aug. 30, 1990.

William C. Brennan, Jr. (Knight, Manzi, Brennan, Ostrom & Ham, P.A., on the brief), Upper Marlboro, for appellants.

Patricia P. Hines, Asst. County Atty. (Clyde H. Sorrell, County Atty., and Linda D. Berk, Sr. Asst. County Atty., on the brief), Rockville, for appellees.

Argued before MOYLAN, GARRITY and WENNER, JJ.

WENNER, Judge.

Upon this appeal and cross-appeal from the Circuit Court for Montgomery County, we are asked to consider the validity of a comprehensive local ordinance regulating the towing of motor vehicles from private property without the consent of the vehicles' owners. We shall reverse the judgment of the circuit court which declared the ordinance unconstitutional in its entirety. In so doing we shall address, although not necessarily in the order presented, the following arguments:

I.  A local ordinance which requires a towing service to accept as payment for towing and storage fees personal checks or credit cards in lieu of cash violates the prohibition against States making anything but gold and silver coins tender in payment of debts;

II.  A possessory lien is created in favor of the towing service until the vehicle owner pays the towing and storage fees;

III.  A vehicle owner who parks without permission on private property that is properly posted with signs warning that trespassing vehicles will be towed, and whose vehicle is towed at the direction of the property owner, is liable for the towing and storage fees;

IV.  Towing services do not have standing to assert that the rights of private property owners are improperly infringed by the ordinance;

V. The ordinance is a proper exercise of the police power.[1]

Appellants, G & G Towing, et al., are a number of towing companies. They sought a declaration that the ordinance, Bill No. 16–87, was unconstitutional. In the meantime, appellants were successful in enjoining the appellee, Montgomery County, Maryland, from enforcing the ordinance until resolution of the merits of their complaint.[2] The matter was heard by the circuit court upon cross motions for summary judgment. After a hearing, the circuit court declared that the ordinance was unconstitutional as exceeding the county's police power.[3] We disagree.

Montgomery County has adopted a home rule charter under Article XI–A of the Maryland Constitution. Consequently, Article 25A, Section 5(S) of the Annotated Code of Maryland confers upon Montgomery County the authority to "pass all ordinances, resolutions, or bylaws not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." *See also Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 159–160, 252 A.2d 242 (1969). *See also* Mont.Co.Code § 2–12 (1984) (conferring upon the Montgomery County Council "full

---

1. Issues I and II are presented by appellants; issues III, IV and V are presented on cross-appeal by appellee.

2. The injunction was later modified to permit appellee to enforce the provisions relating to posting signs, requiring the towing companies to notify the local police department of trespass tows, and precluding the towing of vehicles with valid handicapped identification. 30C–4(b), 30C–5 and 30C–6.

3. The circuit court's declaration was based upon grounds different from those advanced by the appellants. Appellants contended below that the ordinance violated Article I, § 10 of the United States Constitution by impairing the obligation of contracts and establishing a form of legal tender other than gold and silver coin. Appellants' claim that the ordinance violated anti-trust laws was apparently abandoned at the hearing.

power and authority to enact ordinances for the county as it may deem necessary for the peace, good government, safety or welfare of the county"). The Court of Appeals has held that this grant of power to legislate for the general welfare of the county is to be afforded a broad reading. *Id.* at 161, 252 A.2d 242. The Court has also said that it is enough that a legislative act tends to correct some local evil or promote some local interest, and that the act is reasonably and substantially related to its goal or purpose. *Steuart Petroleum Co. v. Board of County Commissioners,* 276 Md. 435, 446–447, 347 A.2d 854 (1975). For purposes of illumination, we summarize the legislation and its objective.

The catalyst behind Montgomery County Council Bill No. 16–87, to be codified in the Montgomery County Code as Chapter 30C, Motor Vehicle Towing From Private Property, was citizen complaints of "excessive rates, little or no notice of which areas are off limits to parking, and difficulty in redeeming towed vehicles." *See* Legislative Request Report, Bill No. 16–87. The purpose of the Bill, then, was to "clarify the respective rights of landowners, towing services, and motorists." *Id.*

The scope of Bill No. 16–87 is limited to the towing of motor vehicles from private property without the consent of the owners of the vehicles. 30C–1(b). Generally, vehicles with valid handicapped registration plates or valid disabled person's parking permit may not be towed from private property without the consent of the vehicle's owner.[4] 30C–6.

The rates which a towing company may charge are limited to those maximum rates set by the county executive. 30C–2(a). Every trespass towing company must file with the office of consumer affairs a schedule of its towing and

---

4. A vehicle with a valid handicap registration plate or a valid disabled person's parking permit conspicuously displayed may be towed without the owner's consent, however, if the tow is expressly authorized by a police officer at the request of a property owner, or the vehicle is blocking a clearly marked fire lane or access to another vehicle, the property or a building.

storage rates, and is precluded from charging fees that exceed that schedule. 30C–3(c) and (d). Each trespass towing company must enter into a written agreement with every private property owner that authorizes a towing company to tow trespassing vehicles. 30C–3(f).

Bill No. 16–87 imposes certain requirements on owners of private property. Prior to having a motor vehicle towed without the consent of the vehicle's owner, the property owner must post a sufficient number of signs notifying the public of the parking restrictions. 30C–4(b)(1). Signs must be posted 24 hours prior to towing a trespassing vehicle. *Id.* It is sufficient if at least one sign is clearly visible from each parking area and each vehicle entrance to the property. 30C–4(b)(2). In the alternative, private parking lots having more than 100 spaces may post in a conspicuous place, readable from all affected spaces, at least one sign for every 75 spaces. *Id.* Each sign must indicate the area and time within which the restrictions will be enforced and give notice that any vehicles violating the restrictions will be towed at the owner's expense. 30C–4(b)(3). Signs must include the telephone numbers of each towing company hired to tow and, in the alternative, a telephone number at which the towing company may be reached at all hours. *Id.* Signs must be clearly legible and unobstructed. *Id.* Alternatively, owners of residential property, such as condominiums, may have a trespassing vehicle towed within not less than 48 hours after having attached a written notice to the vehicle in a conspicuous place notifying the owner of the violation. *Id.* Public notice provisions are inapplicable to towing from the yard or driveway of single family dwellings. 30C–1(b)(3)(B). Private property owners or their agent must expressly authorize the tow. 30C–4(c).

Bill No. 16–87 also prescribes towing and redemption procedures. The towing company must tow each trespassing vehicle to the nearest storage site available to the company, but not more than 12 miles from the origin of the tow. 30C–8(a)(1). The towing company must keep the towed vehicle and its contents secure at all times. 30C–

8(a)(4). The towing company must notify the appropriate county or municipal police department of each trespass tow, 30C–5(a); the police must be contacted again if a vehicle remains in the company's possession for more than 72 hours. 30C–5(d). The towing company is required to remain open at least 2 hours after completion of the last tow. 30C–8(b).

The towing company is required to accept in lieu of cash payment either a major credit card or a personal check. 30C–8(c)(2)(A).[5] In the event a vehicle owner later withholds payment for a credit card transaction or stops payment on a check, the vehicle owner is liable to the towing company for twice the amount validly charged. 30C–8(c)(5) and (6). If, prior to a vehicle's removal from private property but after the vehicle has been attached to the tow truck, the vehicle owner returns to the tow site, the towing company must release the vehicle to the owner upon payment by the owner of a release fee. 30C–7(a). Such release fee cannot be greater than one-half the fixed rate for towing the vehicle to the nearest storage site. *Id.* With this background firmly in mind, we now turn to the issues at hand.

## Discussion

At the outset, we observe that an ordinance, like a statute, is presumed to be valid. *R.S. Construction Co. v. City of Baltimore,* 269 Md. 704, 706, 309 A.2d 629 (1973). A legislative enactment is within the permissible bounds of the police power if it is reasonably and substantially related to the public health, morals, safety and welfare of the people. *Steuart, supra,* 276 Md. at 446, 347 A.2d 854. Beyond that, of course, the act must not infringe upon any constitutional guarantees. *Maryland Board of Pharmacy v. Sav–A–Lot, Inc.,* 270 Md. 103, 106–107, 311 A.2d 242 (1973). In any event, the burden of demonstrating the

---

5. The towing company is required to accept the two most widely used major credit cards as determined by the Office of Consumer Affairs.

invalidity of a legislative enactment rests with the party attacking its constitutionality. *Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 48, 300 A.2d 367 (1973).

A.

The circuit court found that Bill No. 16–87 was an improper exercise of the police power for essentially two reasons.

1.

■ The circuit court determined that the provisions of the Bill relating to the posting of signs and the exception prohibiting generally the towing of vehicles with valid handicapped identifications were too stringent and interfered with the rights of private property owners to remove trespassing vehicles from their property. Initially, we shall reject appellee's contention that appellants do not have standing to assert that the rights of private property owners are improperly infringed by the ordinance. It is true that this issue was not raised below. *See supra*, n. 3. As we see it, however, the circuit court was not precluded from granting declaratory relief on grounds entirely different from those on which relief was sought. *See Mayor and Town Council of New Market v. Armstrong*, 42 Md.App. 227, 233, 400 A.2d 425 (1979). And, appellee cites no authority for the proposition that the circuit court improperly decided the issue. Moreover, we think it appropriate on appeal to address the issue, as it was expressly decided by the circuit court. Md.Rule 8–131(a).

■ Having crossed that hurdle, we need only briefly consider appellee's contention on cross-appeal that the Bill does not improperly interfere with the rights of private property owners. There is no evidence whatsoever in the record before us that the provisions of the Bill requiring signs to be posted and prohibiting generally the towing of vehicles with valid handicapped identification are unduly restrictive of the rights of private property owners. In fact, not one private property owner participated in this

litigation. Consequently, in view of the strong presumption as to the validity of the Bill, we hold that there was insufficient evidence to sustain, on these grounds, the circuit court's conclusion to the contrary. *Salisbury Beauty Schools, supra,* 268 Md. at 48, 300 A.2d 367.

## 2.

■ Bill No. 16–87 does not expressly create a possessory lien in favor of the towing company. In other words, the Bill does not give a towing company the right to retain a motor vehicle until the vehicle owner pays the towing and storage fees. 30C–8(c)(8). From that, the circuit court concluded that "since no possessory lien exists, there was no statutory or common law requirement that the owner has to pay the tow truck operation ... the trespassing vehicle owner isn't required to pay anything for the return of his vehicle and is entitled to have it returned upon demand."

Appellants contend that, under the circumstances, a common law possessory lien is created in favor of the towing company until the vehicle owner pays the towing and storage fees. However that may be, appellants repeatedly conceded at the hearing in the circuit court that the Bill created no possessory lien by virtue of the trespassing vehicles having been towed and stored. Consequently, whether the circuit court properly decided that no possessory lien was created by Bill No. 16–87 has not been preserved for review. *Pitts v. Mahan,* 39 Md.App. 95, 96–97, 382 A.2d 1092 (1978) (whether trial court erred in finding plaintiff guilty of contributory negligence as a matter of law not preserved for review where plaintiff's counsel conceded at trial that plaintiff was contributorially negligent).

■ Beyond that, the parties agree on appeal that a vehicle owner who parks without permission on private property that is properly posted with signs warning that trespassing vehicles will be towed, and whose vehicle is towed at the direction of the property owner, is liable to the

towing company for towing and storage fees. We agree and hold that, under these circumstances, there is an obligation to pay.

A promise to pay may be manifested by conduct or by implication from surrounding circumstances. Restatement (Second) of Contracts § 4 Comment a (1981). *See also* 1 Corbin, Contracts §§ 18–19 (1963). As we see it, the obligation to pay arises because a vehicle owner, who parks in an area where signs prohibit the parking of unauthorized vehicles and such signs indicate that vehicles will be towed at the expense of the vehicle's owner, impliedly agrees to pay reasonable towing and storage charges. *See* 73 Op. Atty. Gen. —— (1988) [Opinion No. 88–055 (December 19, 1988)]. In *Capson v. Superior Court of Marcipoa*, 139 Ariz. 113, 677 P.2d 276 (1984), a towing company was charged with theft after it failed to return to the owner a vehicle which had been involuntarily towed. While the Court found that no possessory lien existed, it indicated that there may be an implied agreement by the vehicle owner to pay for towing where the signs posted on the parking lot specified that a $75 towing fee would be assessed if the vehicle was towed. *Id.* 677 P.2d at 278. Under Bill No. 16–87, posted signs must indicate, among other things, that any vehicles that are parked in violation of the restrictions may be towed at the expense of the vehicle owner. 30C–4(b)(3)(B). We hold that the provisions of Bill No. 16–87 regulating the posting of signs are sufficient to place vehicle owners on notice that if they park in designated no parking areas they are liable for reasonable towing and storage fees.[6]

Our holding is not inconsistent with Md.Transp.Code Ann. § 26–301(b)(3) (1987 & Supp.1989), which empowers political subdivisions generally to regulate the towing of vehicles

---

6. The obligation to pay may also arise by statute or ordinance. *See T.R. Ltd. v. Lee*, 55 Md.App. 629, 465 A.2d 1186 (1983), *cert. denied*, 298 Md. 395, 470 A.2d 353 (1984). We express no opinion as to whether Bill No. 16–87, read in its entirety, imposes such liability.

from privately owned parking lots. Moreover, statutes in other jurisdictions expressly provide that a vehicle owner who without authorization parks on private property in defiance of posted parking restrictions shall be deemed to have consented to the removal and storage of their vehicle as well as to payment of charges for its removal and storage. *See* Ill.Rev.Stat. Ch. 82, para. 47a (1989); Ohio Rev.Code Ann. § 4513.60 (Baldwin 1989).

The actions of a municipality in the exercise of its police power will ordinarily not be interfered with unless they are arbitrary or patently unreasonable. *Salisbury Beauty Schools, supra,* 268 Md. at 48, 300 A.2d 367. In *Crane Towing, Inc. v. Gorton,* 89 Wash.2d 161, 570 P.2d 428 (1977) the Supreme Court of Washington upheld as a proper exercise of the State's police power a statute that is markedly similar to Bill No. 16–87. Like Bill No. 16–87, the statute in *Crane* requires private property owners to post signs that contain warnings that unauthorized vehicles will be towed as well as information to assist vehicle owners in recovering their vehicles. 570 P.2d at 430. In *Crane,* the statute also imposes restrictions on the towing companies. For instance, towing companies are required to be available on a 24–hour basis to facilitate vehicle recovery, and must give notice of each towing to local law enforcement agencies. *Id.* at 431. And, not unlike Bill No. 16–87, towing companies are required to accept as payment for towing and storage fees either cash, personal checks drawn on local banks, or valid and appropriate credit cards. *Id.* at 432, n. 6. The statute also provides for damages twice the amount of towing and storage fees in the event that the vehicle owner later attempts to defraud the towing company. *Id.* We find persuasive the Court's reasoning in *Crane* as to why the legislation was a valid exercise of the State's general police power:

Modern society's dependence on the automobile as the primary mode of travel is well known in this time of national discussion on energy conservation. Traveling hundreds of miles from one's home and back in one day,

whether for business or pleasure, is surely not an uncommon experience. It cannot be doubted that the unexpected loss of the use of one's vehicle directly affects the safety and welfare of vehicle operators and owners. A person may be stranded hundreds of miles from home with no alternative mode of return travel and with no place to stay until the vehicle can be recovered. Similarly, the loss of the use of one's vehicle may substantially affect one's employment. Legislation which tends to assist members of the public from involuntarily losing the use of their vehicles and which tends to expedite recovery of their vehicles once they have been removed fairly and clearly promotes the safety and welfare of the public.

*Id.* at 433–434. Accordingly, we hold that Bill No. 16–87 bears a reasonable and substantial relation to the safety and welfare of the people and to the goals of the Montgomery County Council.

### B.

█ That the enactment of Bill No. 16–87 is a proper exercise by the county of the police power does not conclude our inquiry, however. Appellants contend that the Bill, by requiring towing companies to accept as payment for towing and storage charges personal checks or credit cards in lieu of cash, violates Article I, § 10 of the United States Constitution:

No State shall ... make anything but gold and silver coin a tender in payment of debts....

We see it somewhat differently.

Section 30C–8(c), entitled "Payment and Promise to Pay," requires a towing company to accept as full payment of towing and storage charges either a credit card or a personal check. 30C–8(c)(2)(A). That section does not create a new form of legal tender nor regulate its value. Nor does it deprive the towing company of its right to collect its debt in money. In *Porter v. City of Atlanta,* 259 Ga. 526, 384 S.E.2d 631 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1297, 108 L.Ed.2d 474 (1990), the Supreme Court of Georgia

considered whether a municipal ordinance requiring wrecker companies to accept checks and credit cards attempts to legislate a change in legal tender. In rejecting the argument, the Court said,

[t]he regulation does not require appellees to accept something other than legal tender to discharge a debt. The debt is discharged when the appellants receive payment in legal tender through a third party institution.

384 S.E.2d at 634. We hold that the circuit court's determination that the provision at issue represents merely an alternative manner of "cash" payment, rather than establishing a substitute form of legal tender, was correct.

Furthermore, the provisions requiring a towing company to accept checks or credit cards has a reasonable relation to facilitating the recovery of vehicles by their owners. Moreover, in the absence of a possessory lien to secure payment of towing and storage charges, those provisions are obviously favorable to the towing companies. In any event, a towing company that has been defrauded may find solace in the provisions protecting towing companies against an owner who later withholds payment. *See* 30C–8(c)(5) and (6).

Appellants' reliance on *Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta*, 3 F.2d 614 (N.D.Ga. 1925) is misplaced. That case held unconstitutional a state law permitting banks to pay its checks by another check. This was, according to the Court, a plain effort to make a debt dischargeable by something other than gold or silver coin or other medium fixed by constitutional federal authority. *Id.* at 616. Yet, the Court said that the case would have been different had the statute made the check to be given by the bank in payment of a debt only tentative and to be payment when itself was paid by lawful money. *Id.* This latter circumstance is not unlike the present case. Here, the tender of personal checks or credit cards are characterized as promises to pay. *See* 30C–8(c).

In sum, we hold that the circuit court erred in holding that Bill No. 16–87 was an unconstitutional exercise of the police power by Montgomery County.

JUDGMENT REVERSED.

COSTS TO BE PAID BY THE APPELLANTS.