Frederick G. Schmidt, Off. Ref.
This action, to declare an amendment to the Zoning Ordinance of the City of New Rochelle, unconstitutional, as it affects the plaintiff’s property, and to declare that she has a vested right to develop her property in accordance with the provisions of the R-1A district zone of the 1955 New Rochelle Zoning Ordinance, and to restrain the city from enforcing certain amendments to its Zoning Ordinance as they affect the plaintiff’s property, was referred to me to hear and determine.
This case presents an unusual situation, unlike any of the usual zoning cases. In 1955, after extensive study, the city adopted a comprehensive Zoning Ordinance, in which the plain *124 tiff’s property was placed in an R-1A district, the highest residence district then provided. Lots were required to contain 10,000 square feet, with a 100-foot frontage at the building line, rather than 7,500 square feet formerly permitted.
In 1956 the New Rochelle City School District requested the plaintiff to give it 13.3 acres of her property, referred to in the testimony as 13% acres, to be used for the erection of an elementary school, with its surrounding recreational area. She had a total of 62.2 acres in her entire property. Mrs. Ward was willing to make this gift of land, admittedly worth $140,000, and constituting more than 20% of her property, on condition that the school parcel conform to the overall development of her property, which could only mean a development in accordance with the Zoning Ordinance as it then existed. Mrs. Ward was interested primarily in knowing what she could later do with the remaining portion of her property, if she gave the school site to the City Board of Education. The Board of Education of the City School District was required by the Education Law to apply to the City Planning Board for approval of the proposed school site.
Thus, the City Planning Board, as the representative of the city, had a duty in connection with this school site, as well as a duty as the representative of the same city, to pass on the plat plan, which showed location of the school site and the location of streets and lots. Obviously, these must be correlated in a complete and harmonious plan of the whole property.
Mrs. Ward engaged Leland H. Lyon, an architect, to prepare a plat plan of her entire property, showing its subdivision, including the school site. He represented her in her negotiations with the Board of Education and the Planning Board. He had died prior to the hearing before me.
The Planning Board meeting of December 10, 1956, is crucial in the matter. At the hearing before me, Charles A. Hughes, the City Planning Engineer, read from the minutes of this meeting, as follows: ‘ ‘ Mr. Brace explained to the Board that the Board of Education asked Mrs. Ward to give a piece of land for an elementary school and she said that she was willing if it conformed to an over-all development of her property. She commissioned Mr. Leland H. Lyon to set aside 13% acres for the school, and plan a proposed temporary subdivision of the remaining land. This subdivision of the remainder of her land was not for building at this time but for the placement of the school and the preserving of her better pasture lands. Mrs. Ward stated that there would be no additional land for a park, and also requested that the Board of Education pave and extend *125 Broadfield Road. Mr. Brace continued by stating that in this subdivision some things were obtained that were hard to get formerly and the Board had been striving for — namely, that no lots are fronting on Pine Brook Boulevard or Quaker Ridge Road, and land was provided for the widening and straightening of Pine Brook Boulevard and Quaker Ridge Road. Mr. Lyon remarked that the school building itself only takes up one acre of the land, and that the rest could be planned for landscaping and a school recreation area. Mr. Horgan made a motion that the subdivision be approved upon condition that the property which Mrs. Ward proposed to give to the Board of Education is accepted by the Board of Education and used by the Board for school purposes, and the playground area made available to the community in consideration of the Board waiving the 10% on this subdivision. The motion was seconded by Mr. Jacobson and unanimously approved by the Board.”
Mr. Brace, referred to in the minutes, was an assistant to Mr. Hughes. Thus, the plat plan was approved by the Planning Board at this meeting, with three conditions:
1. That the Board of Education of the City School District accept the gift of the property, and
2. That the land be used for school purposes, and
3. That the playground area be made available to the community in consideration of the board waiving 10% on this subdivision under the ordinance regulating approval of subdivisions, 10% of the land; in this case, 6.2 acres would have been required to be given for recreational purposes. Since testimony showed that the school itself was to occupy only one acre, this third provision more than met the usual requirements. Attention is also called to the benefit the city obtained under this plat plan in having no lots face on two important highways, Pine Brook Boulevard, and Quaker Ridge Road, and further, in receiving land for the widening and straightening of these roads, without cost to the city.
The plaintiff was duly notified in writing by the Planning Board of the approval of the subdivision map and of the three conditions imposed. The board also approved the school site.
On December 19, 1956, the Planning Board again met and considered an upzoning of vacant tracts of land in the city and asked Mr. Hughes and the Corporation Counsel for a report on the Ward property and as to whether the gift of the school site was dependent on certain conditions. Mr. Raymond, the Planning Consultant of the city, at that meeting commented that regardless, the Planning Board cannot commit the Council with respect to zoning. Mrs. Ward was not informed of this meeting *126 or of anything that transpired there, until after the delivery of her deeds.
By deeds dated December 29, 1956, and January 8, 1957, Mrs. Ward conveyed the school site to the City Board of Education. . No conditions appeared in the deeds, probably because she believed, and with good reason, that the plat plan had been approved, and that all three conditions, of which she had been notified, had been met, and because she knew nothing of the matters considered at the board’s meeting on December 19,1956. Mr. Hughes testified that she had met the three conditions.
The Planning Board met again on January 14, 1957, after Mrs. Ward, in apparent reliance on the action of the board, taken on December 10, 1956, had delivered her deeds. At this meeting the board deleted the third condition and disapproved the subdivision map and recommended to the Common Council that the Zoning Ordinance be amended by placing the undeveloped areas of the city in a new district, where 20,000 square-foot lots, with a width of 150 feet at the building line, would be required.
There is no statutory authority for a planning board, having once approved a plat plan, later to disapprove it. Only when the plat plan is presented does the board have the right to approve, modify and approve, or disapprove. If it disapproves, it must state its reasons. Here, the board approved the plan and later purported to disapprove it, because one condition, that with reference to recreation, had not been met. It, however, had been met, as shown by the testimony of the City Planning Engineer, Mr. Hughes. This attempted disapproval is therefore null and void.
By ordinances, dated May 15, 1957, August 19, 1957, and September 11, 1957, the Common Council followed this recommendation to upzone, with the result that the plaintiff’s property was placed in this new district. Land belonging to the Wykagil Country Club, the Hudson School, Cherry Lawn Farm and a Golf Driving Range, were also placed in this new district. Undeveloped land at Premium Point was not placed therein, because, it was testified, ‘ ‘ deed restrictions ’ ’ made this unnecessary.
The evidence in this case shows that the plaintiff conveyed a portion of her premises to the City School District on the understanding that the plat plan of her remaining property be approved by the City Planning Commission in accordance with a preliminary sketch which she presented, which showed the proposed streets, turn-arounds, boundaries and number of lots and the location of each, as contemplated in the development. *127 As mentioned above, this plat plan was approved by the City Planning Board before Mrs. Ward gave any deed to the School District. By reason of its approval, when she completed the conveyance to the School District, she had a vested right to develop her remaining land in accordance with her plan, as approved by the Planning Board. At that point, she had given up land of the value of at least $140,000 and had agreed, as shown on the plat plan, to convey to the city certain land at the boundary of her remaining premises for street widening. By the plat plan, the city also secured an advantage that it admitted it desired, but could not compel, namely, that no lots in the plat would face or have access to either of the two heavily travelled highways abutting on the premises. Certainly she had changed her position and had acquired a vested right. This vested right thus acquired gave her the right to make and develop the subdivision in accordance with the approved plat plan and the Zoning Ordinance which was in effect at the time of the conveyance. Having this vested right, the upzoning of her premises by the City Council was illegal and without effect.
The record contains some discussion about the third condition pertaining to the approval of the plat plan, viz., that the playground area be made available to the community in consideration of the board waiving 10% on this subdivision. This condition was met by her in the following manner: She conveyed to the School District 13.3 acres, of which only a small portion was to be used for building and landscaping. A substantial portion remained for playground and recreational purposes. The proof shows that customarily school playgrounds were placed under the control of the City Recreation Department by the Board of Education. In any event, her obligation was to make it available for use by the community, and this she did when it became available through the School District for recreational purposes.
The sequence of events, as noted above, which are hereafter referred to, places emphasis on the fact that some relief should be afforded to the plaintiff.
1. December 10, 1956, plat plan and school location approved by Planning Board and plaintiff notified of the approval and the three conditions thereof.
2. December 19, 1956, Planning Board discussed the upzoning of large vacant parcels in the city, including the plaintiff’s premises, but gave no notice to the plaintiff.
3. December 29, 1956, and January 8, 1957, plaintiff conveyed 13.3 acres to the City Board of Education as a site for the school and recreational area.
*128 4. January 14,1957, the School District having received deeds with no conditions therein set forth, the Planning Board again approved the school site and discussed upzoning of the remaining Ward premises, and, upon withdrawing the third condition, disapproved the previously approved plat plan, all without notice to Mrs. Ward or to anyone else representing her.
Thus, the net result was that Mrs. Ward, relying on the approval given on December 10, was induced to make her valuable gift in the well-founded belief that she could develop her property in lots of 10,000 square feet, and when she had done this, it was proposed to deprive her of what was the true and equitable consideration for her gift of land. She was given no opportunity to withdraw her proffered gift, as she might well have justly done, had she known that the approval, which had been the consideration or basis for the gift, was to be withdrawn. It seems self-evident that in consideration of the gift to the School District, the plaintiff sought something more than the approval of her plan, which could be withdrawn shortly after her conveyance was made.
Vested rights are variously defined in various cases, and no case has been found which is the parallel of this case. Most cases of vested rights grow out of circumstances in which a permit has been issued by some municipal official,with authority, and pursuant to that permit, the permittee proceeds with his improvements, spends money to further it, and obligates himself in reference to it. It should be pointed out that if, in such cases, a vested right comes into being, although such expenditures are expected to be recouped by the sale of lots, how much more readily should a vested right come into being in a case such as this, where the permittee has actually permanently parted with land of great value for the benefit of the School District and the city, as well, with no chance of recoupment, as in the case of the usual permittee, who claims a vested right.
The case of Elsinore Property Owners Assn. v. Lamb (286 App. Div. 1105) is an authority for this determination. In that case, certain property owners in a subdivision brought an action against a developer (the successor to the original developer) for violations of an amended building zone ordinance, which had upzoned the size of lots in the development. The plaintiffs in that case made no complaint that the buildings erected in the subdivision violated the ordinance in either construction or use, but claimed that the amended zoning ordinance was violated by reason of certain lots not having the width and area required by the amended zoning ordinance. Permits for building on *129 some of these lots were granted by the Building Inspector, and the action sought an injunction against the construction and the issuance of such permits and the construction of buildings pursuant to such permits. The complaint was dismissed, and on appeal, the dismissal was sustained. The following is a quotation from the decision in that case (pp. 1106-1107):
‘ ‘ Municipal planning and zoning, while closely akin, are not identical. The former is the broader term. The type of municipal development planning provided for in sections 32 and 33 of the General City Law was a new field of legislation comparable with the development of zoning laws and regulations. (Matter of Brous v. Smith, 304 N. Y. 164; Village of Lynbrook v. Cadoo, 252 N. Y. 308, 314.) In part, its purpose was to preserve a uniform and harmonious development of the municipality ‘ and to prevent the individual owner from laying out streets according to his own sweet will without official approval.’ (Village of Lynbrook v. Cadoo, supra, p. 314.) A city ‘ conditions its approval of such construction upon his compliance with reasonable conditions designed for the protection both of the ultimate purchasers of the homes and of the public. ’ By regulating subdivision of land, the municipality may avoid being saddled with an onerous burden involved in the completion or instaEation of necessary street and sanitation facilities. (Matter of Brous v. Smith, supra, pp. 170, 169.) In our opinion, the original developer which furnished a performance bond and expended a substantial sum on required improvements, and which was not in default when the amendment was enacted, had a vested right to complete the development as planned, notwithstanding the area amendment of the zoning ordinance. Therefore, because Morwand had the right to continue to develop, the complaint was properly dismissed. ’ ’
This Elsinore case differs from the instant one in only two significant ways. 1. In Elsinore, the owner had acquired its vested right by expending moneys in developing the property and had furnished a performance bond to the municipaEty. In this case, the owner had acquired her vested right by changing her position by giving to the City School District over 20% of her land available for development. 2. In Elsinore, the approved plan had been filed with the County Clerk. In this case, the approved plat plan could not be so filed because of the action of the Planning Board in disapproving the previously approved plat plan. Although I have held this disapproval to have been iEegal, no County Clerk would file a plat plan which bore the notation ‘ ‘ Disapproved, ’ ’
*130 Although it is not necessary to a determination of this case, in the light of the preceding holding, it should be pointed out that this amendment of the Zoning Ordinance in question was not based on a well-considered plan. The facts are these — after an exhaustive study of 18 months, the 1955 Zoning Ordinance for the city was adopted. After approval of the plat plan, but before the giving of deeds by the plaintiff to the School District, there appears to have arisen in the minds of some of the members of the Planning Board the desirability of upzoning in the city, because of the rapid growth and development in the northern end of the city and attendant traffic situation. In line with that thought, immediately after the plaintiff had conveyed to the School District, and without notice to her, the matter of upzoning was put into action. The testimony shows that this was done on the basis of upzoning all large undeveloped tracts in the northern end of the city to provide for lots one-half acre in area, rather than one-quarter acre, and with a greater width at the building line. No special study was given to the particular lands involved, and no consideration to the existing developments in the several neighborhood, nor to schools, driving range, vegetable stand, etc., in the neighborhood of this land. One large tract, at Premium Point, not in the northern end of the city, was omitted from upzoning, because, as it was testified, “ they were covered by property restrictions.” This does not indicate a well-considered plan adopted for the general health, safety and welfare of the whole city. Legislative action must, of course, be left with the legislative bodies and not with the courts, and the oft-repeated and familiar rules governing the enactment and amendment of zoning ordinances must be adhered to; but giving consideration to all that, it cannot be said that there was any plan, other than to upzone, regardless of varying conditions in the different areas, in this amendment to the Zoning Ordinance.
As indicated at the opening of this decision, this is an unusual case. There are many questions in it which have not previously been passed upon by any court, so far as I am able to determine. Recognizing all the frailties in the case, it is still one where equity should protect the rights of the plaintiff, not by setting aside the Zoning Amendment adopted by the city as wholly invalid, but by holding it not applicable to the plaintiff’s property by reason of the sequence of events, as set forth above. If the amendment were held applicable to the plaintiff’s property, a great injustice would be done to one who had dealt most generously with her community by depriving her of the just consideration contemplated by all parties at the time she made her *131 gift. As the late Justice Carswell said in Lowe v. City of New York (240 App. Div. 484, 489, affd. 265 N. Y. 583): “ Courts should not be astute to enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved. ’ ’
This memorandum shall constitute findings of fact and conclusions of law.
Submit judgment for the plaintiff accordingly, on two days’ notice.