HARFORD COUNTY, MARYLAND, ETC. *v.* TATAR,
LININGER, CLARK & WOOD, INC. ET AL.

[No. 35, September Term, 1976.]

*Decided September 28, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY,
SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Maurice W. Baldwin, Jr., Deputy County Attorney,* with
whom was *L. Ted Hannah, Assistant County Attorney,* on
the brief, for appellant.

*George W. Liebmann,* with whom were *Larry H. Mitchell*
and *Frank, Bernstein, Conaway & Goldman* on the brief, for
Tatar, Lininger, Clark & Wood, Inc., part of appellees. *John
E. Kelly, County Attorney,* for Charles B. Anderson, Jr.,
County Executive for Harford County, other appellee.

SMITH, J., delivered the opinion of the Court.

We shall here vacate a judgment and remand the case for the dismissal of the petition for a declaratory judgment. We determine *ex mero motu* that the petition does not state a cause for declaratory relief. We thus act because we do not wish to appear by deciding this controversy to have given our approval *sub silentio* to the schizoid procedure here invoked.

Essentially, this is a dispute between the County Executive of Harford County (the Executive) and the County Council of that county (the Council). Caught in that dispute is the matter of expansion of the courthouse and a contract with an architectural firm, Tatar, Lininger, Clark & Wood, Inc. (the architect), pertaining to that expansion.

Harford County (the County) is a charter county. Unlike Wicomico County and the earlier situation in Montgomery County, in both of which executive authority was lodged in the county council which then sat periodically in legislative session, there is an elected executive and an elected council. By § 301 of its charter "[t]he Executive Branch of the County government shall consist of the County Executive and all officers, agents, and employees under his supervision and authority." Under § 313 he is to "appoint a single officer to head each agency of the Executive Branch" and "the members of all boards and commissions," subject in each instance to confirmation by the Council. Section 201 provides that "[t]he Legislative Branch of the County government shall consist of the County Council . . . and the officers and employees thereof." Section 202 states that "[a]ll legislative powers which may be exercised by Harford County . . . shall be vested in the Council."

The Council adopted Bill No. 75-67 on October 7, 1975. It was to be known as the "Procurement Law of Harford County, Maryland." It provided for a department of procurement with a director to be appointed by the Executive and confirmed by the Council. However, it also created a "Board of Estimates" to consist of the Executive or his designee, the president of the County Council or the vice-president in his absence, one citizen of the county to be

appointed by the Council, one citizen to be appointed by the Executive, "and the head of the using agency that has responsibility for supervision of the execution and performance of the contract." To it was assigned the responsibility for awarding all contracts of $25,000 or more for supplies and contractual services and of $2,500 or more for "consultant and other professional services, except for the employment of special legal counsel pursuant to Section 403 (c) of the Charter and physicians' services . . . ." The Executive vetoed the measure on October 29. The Council overrode the veto on November 4. Section 219 of the Charter provides that "[a]ny law, except an emergency law, shall take effect sixty calendar days following the date it becomes law, unless by its terms it is to take effect at a later date, or unless it is petitioned to referendum . . . ."

On November 18 the Council adopted Bill No. 75-97 as an emergency measure. It provided that, "[n]otwithstanding any other applicable provisions of law," all contracts concerned with "construction and/or for equipment for the existing building or any capital project to be used as a public facility or building for any Court having jurisdiction in Harford County, Maryland, shall be approved by the County Council prior to their being awarded or executed by any person or body on behalf of Harford County, Maryland." By its terms the act was to apply retroactively to October 21, 1975. This bill was vetoed by the Executive on December 10. The Council overrode the veto on December 16.

On December 9 the Executive entered into a contract on behalf of the County with appellee Tatar, Lininger, Clark & Wood, Inc. (the architect), for architectural services for the courthouse.

A petition on the law side was filed in the Circuit Court for Harford County on January 19, 1976, essentially reciting the above facts. It further stated that the Executive believed: Bills No. 75-67 and 75-97 were "void and illegal laws, and [were] in conflict with the Charter of Harford County Maryland, the laws of Maryland and the Constitution of the United States of America"; that he thus was "confronted with executing and enforcing laws which he

believe[d] [to be] unconstitutional"; and that a public official when thus confronted "is authorized under the laws and cases of Maryland to seek a ruling of a Court of competent jurisdiction as to the validity of such laws and their applicability to the particular circumstances of th[e] case." It further said that the Council believed: such bills to be "valid and enforcible laws" and that "[a] law once adopted by a legislative body is to be given a presumption of validity and legality until a Court of competent jurisdiction rules otherwise." The petition was "by Charles B. Anderson, Jr., County Executive for Harford County, Maryland, . . . by his attorneys [of the Harford County Department of Law], and [by yet another attorney of that Department] for Harford County, Maryland, on behalf of the Harford County Council." It was titled as being "ex parte" as to the petition of Anderson and on behalf of the Council, with an additional titling on behalf of the Council for interlocutory and permanent injunctions against the Executive and the architect. It contained a prayer for relief in the conventional form at the end of the petition on behalf of the Executive and yet another prayer on behalf of the Council. The Executive prayed the court to determine the validity of the two bills. The Council sought an interlocutory injunction against the Executive "to cease and desist all actions, progress and work on the contract" with the architect, a permanent injunction to like effect, an interlocutory injunction against the architect "ordering that [it] proceed no further [under the contract] and cease and desist all work and action on the . . . contract pending a determination of the validity and legality of Bill No. 75-97," and a permanent injunction to the same effect against the architect.

No demurrer was filed. An answer was filed on behalf of the architect. By way of affirmative defenses it claimed that Bill 75-67 did not affect contracts entered into prior to January 5, 1976, including, specifically, the contract with the architect dated December 9, 1975; that if that bill were applicable to the contract of December 9 it contravened the provisions of Arts. 8 and 23 of the Maryland Declaration of Rights, the due process and equal protection clauses of the

14th Amendment to the Constitution of the United States, the contract clause of the Constitution of the United States, and §§ 202, 216, 302, 313, 401, 407, 413, 516, 521, 807, and 904 of the Charter of Harford County; that Bill No. 75-97 contravened §§ 202, 218, and 302 of the Charter of Harford County and thus was illegal and void as applied to the contract with the architect as well as contravening the provisions of the Declaration of Rights and the Constitution of the United States referred to relative to Bill No. 75-67; and that Bills 75-67 and 75-97 "if held applicable and effective with respect to the contract of December 9, 1975, would indefinitely and suddenly delay" compliance with provisions of an act in 1974, passed as an emergency law, relative to the borrowing of funds for "courthouse construction and 'architectural and engineering services, including preparation of plans, drawings and specifications for the purposes enumerated' " under which bonds had been issued and sold.

The matter came on for hearing. The chancellor (Raine, J.) filed a well reasoned opinion. He said that he was "persuaded that Bill 75-97 and Bill 75-67 are invalid because they violate the principle of separation of powers." He stated that since "Bill 75-67 did not become effective until well after the contract between the County and Tatar-Lininger," with "no provision purport[ing] to make it retroactive and it [being] conceded that it has no application to the architect's contract[,] . . . there [was] no immediately justiciable controversy before the Court" relative to that bill. He went on, however, to give his reasons for his conclusions as to the invalidity of portions of it. He found the contract with the architect to be "a valid integrated contract" and that if Bill 75-97 were applied retroactively in accordance with its provisions it would deprive the architect "of a vested contractual right without due process of law." A declaratory judgment in accordance with that opinion was filed. The County Attorney and the Deputy County Attorney then promptly filed an order "not[ing] an appeal by Harford County, Maryland, a body corporate and politic of the State of Maryland, on behalf of the Harford County Council . . . ."

Although the appearance of the County Attorney is entered in this Court on behalf of the appellant, the Council, he argued on behalf of the Executive who filed a brief as an appellee. Being cognizant of the pressing need for expanded court facilities in Harford County, we readily acceded to the petition of the architect for grant of the writ of certiorari prior to consideration of the case in the Court of Special Appeals.

In *County Council v. Supervisor*, 274 Md. 116, 332 A. 2d 897 (1975), we were concerned with the right of appeal to the Maryland Tax Court granted by Code (1957, 1969 Repl. Vol.) Art. 81, § 256 (a) to "the county commissioners of any county where an appeal tax court has been duly created" and whether the County Council of Montgomery County had this right of appeal. Coincidentally, we quoted *Jay v. Co. Commr's. Harford*, 120 Md. 49, 52, 87 A. 521 (1913), that "[u]nder our law County Commissioners are corporations, they act not as individuals but in their corporate entity," citing *Clark v. Harford Agri. & Breed. Asso.*, 118 Md. 608, 617, 85 A. 503 (1912), yet another case originating from Harford County. It held the commission there under consideration "must act by a majority vote, and like other boards, or corporations, the individual members thereof exercise no powers except by and through a majority of the body itself." We concluded at p. 123 of 274 Md. "that it is the corporate entity of Montgomery County, Maryland, so known in its charter, which is vested with the right of appeal under Art. 81, § 256 (a) in lieu of the prior corporate entity, the County Commissioners of Montgomery County," and that "[s]ince the County Council is not the corporate entity, an appeal may not be maintained in its name."

We recognize "the dilemma of the public officer either in refusing to act under a statute he believes to be unconstitutional or in carrying it out and later finding that it was unconstitutional" referred to in E. Borchard, *Declaratory Judgments* 771 (2d ed. 1941), mentioned by Judge Delaplaine for this Court in *Pressman v. State Tax Commission*, 204 Md. 78, 85, 102 A. 2d 821 (1954). We are not satisfied that this is such a case. We have been cited to no

authority for a suit brought in the corporate name of a political subdivision, as was done here, where the conflicting officers join in the petition and ask the courts to determine the controversy between them. Such matters are usually resolved in taxpayers' suits. The architect here is caught in the conflict between Executive and Council, as are the people of Harford County who are being deprived of much needed facilities with the probability that the delays encountered will substantially escalate the ultimate cost to the taxpayers.

One of the most familiar of quotations is that no man can serve two masters.[1] The Executive and the Council should not expect the County Attorney to be placed in the difficult position in which he has here been placed. In the recent case of *City of Baltimore v. Crane*, 277 Md. 198, 352 A. 2d 786 (1976), where the City Solicitor of Baltimore City had given an opinion contrary to the position then maintained by the city, independent counsel was brought in on behalf of the city.

It is with genuine regret that we leave undecided the issues here raised. If the Executive and the Council continue to bicker and to feud we have no doubt that a proper proceeding will be instituted to settle the controversy — although not necessarily to end the bickering and the feuding. We feel it improper, however, to appear to give our blessing to the pleading here presented. Thus, the case will be remanded for the passage of an order dismissing the bill of complaint without prejudice to the bringing of any proper proceeding by the architect for compensation alleged to be due it or by the taxpayers of Harford County for construction of these acts.

> *Judgment vacated and case remanded for passage of an order in conformity with this opinion; Harford County to pay the costs.*

---

1. Matthew 6:24.